**LAUBER–CLAYTON, LLC, Appellant,**

v.

**NOVUS PROPERTIES COMPANY, Respondent.**

**No. ED 98302.**

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 26, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 18, 2013.

Application for Transfer Denied Oct. 1, 2013.

**614**

Thomas G. Berndsen, St. Louis, MO, for appellant.

J. Vincent Keady, Jr., St. Louis, MO, for respondent.

LAWRENCE E. MOONEY, Presiding Judge.

In this action for damages and attorneys' fees, stemming from a real-estate transaction, Lauber–Clayton, LLC, appeals the trial court's entry of summary judgment in favor of defendant Novus Properties Company on res judicata grounds. Comparing the present litigation to the prior litigation, we find no identity of parties because the parties in the present litigation did not adjudicate anything between themselves in the prior litigation. Therefore, we hold that res judicata does not preclude Lauber–Clayton from bringing the present suit. Thus, we reverse the grant of summary judgment and remand the cause to the trial court.

### Factual and Procedural Background

At the outset, we alert the reader that the present and prior litigation involve numerous corporate entities, many with names bearing a common root-word. The litigation involves three "Lauber" entities:

(1) Lauber–Clayton;

(2) Lauber–Crestwood, LLC; and

(3) Lauber–Crestwood Sam's, LLC.

The litigation also involves five "Novus" entities:

(1) Novus Properties;

(2) Novus Holdings, LLC;

(3) Novus–Crestwood, LLC;

(4) Novus–Crestwood Sam's, LLC; and

(5) Novus Management Company.

Although we mention all the entities by name, we conclude that only Lauber–Clayton and Novus Properties are pertinent to the final disposition of this case.[1]

The present and prior litigation began with a commercial real-estate transaction. Our current plaintiff and appellant, Lauber–Clayton, and Novus Holdings owned, as tenants-in-common, a building located on Clayton Road in St. Louis County. According to Lauber–Clayton, it hired Novus Properties in October of 2005 to serve as the listing real estate broker for the marketing and sale of the property. In May of 2006, while the property was still on the market, Lauber–Clayton sold its 26.2% interest in the property to Sebelski Holdings, LLC, for $160,000. Sebelski Holdings and Novus Holdings sold the property less than three months later, for the full asking price of $1,500,000.

Lauber–Clayton believes it was "duped" into selling its interest in the building. It contends Novus Properties and Mr. Browne received the $1,500,000 written purchase offer for the property in April 2006, and then intentionally concealed the offer from Lauber–Clayton, induced Lauber–Clayton to sell its interest in the prop-

---

1. We note the record before us neither clearly sets out the ownership or management of all these entities, nor does the record clearly set out the relationships, if any, between the entities. It appears the following two individuals are involved: Ronald J. Lauber and Jonathan P. Browne. Essentially, Mr. Lauber is associated with the Lauber properties and Mr. Browne is associated with the Novus properties. Mr. Lauber owns Lauber–Clayton. He also purportedly held an interest in a shopping-center property through the other two Lauber entities. Mr. Browne is allegedly president of Novus Properties, controlling, operating, and managing the day-to-day business and affairs of that entity. He also allegedly was sole owner and operator of Novus Holdings, and held an interest in the shopping-center property through the Novus–Crestwood and Novus–Crestwood Sam's entities.

erty at a significantly reduced price, and then once Lauber–Clayton relinquished its ownership interest, sold the property, cheating Lauber–Clayton out of its share of the ultimate purchase price of $1,500,000. Lauber–Clayton sued Novus Holdings, Mr. Browne, and Sebelski Holdings. ("Building case"). It sued Novus Holdings and Mr. Browne for fraudulent misrepresentation and breach of fiduciary duty, based on the parties' relationship as tenants-in-common and business partners. (Counts I and II). It sued Sebelski Holdings for fraudulent misrepresentation, for its concealment of the purchase offer. (Count III). It sued Novus Holdings, Mr. Browne, and Sebelski Holdings for civil conspiracy, for scheming to conceal the purchase offer and divest Lauber–Clayton of its interest in the property and its share of the sale price. (Count IV). And finally, Lauber–Clayton sued Novus Holdings and Sebelski Holdings for unjust enrichment and imposition of a constructive trust. (Counts V and VI). Lauber–Clayton sought to recover its share of the $1,500,000 purchase price, as well as punitive damages and attorneys' fees. Importantly, Lauber–Clayton advanced no claims against Novus Properties, our current defendant.

In addition to the six counts and claims related to the building property, the prior litigation also included five counts related to a shopping center located at the intersection of U.S. Interstate Highway 44 and Big Bend Boulevard in St. Louis County. ("Shopping-center case"). Reportedly, in addition to their dealings involving the building property, Mr. Lauber and Mr. Browne also developed and owned this shopping center. In the five counts of the shopping-center case, two Lauber entities, Lauber–Crestwood and Lauber–Crestwood Sam's, sued four Novus entities: Novus–Crestwood, Novus–Crestwood Sam's, Novus Management Company, and Novus Properties—our current defendant. The two plaintiffs sought to invalidate a tenant-in-common agreement and a management agreement relating to the ownership structure and management of the property. They also sought to recover certain management fees and real-estate sales commissions that plaintiffs alleged defendants had improperly received.[2] Importantly, Lauber–Clayton advanced no claims related to the shopping center.

For ease of understanding, we list the parties to the prior litigation, which consisted of both the building case and the shopping-center case. We have underlined the names of the parties to our present litigation.

| | | | |
|---|---|---|---|
| "Building Case" Counts I–VI | *Lauber–Clayton* | vs. | Jonathan P. Browne Novus Holdings, LLC Sebelski Holdings, LLC |
| "Shopping–Center Case" Counts VII–XI | Lauber–Crestwood, LLC Lauber–Crestwood Sam's, LLC | vs. | Novus–Crestwood, LLC Novus–Crestwood, Sam's LLC Novus Management Company *Novus Properties* |

2. Specifically, the two plaintiffs sued all four entities for a declaratory judgment invalidating a tenant-in-common agreement and a management agreement relating to the ownership structure and management of the property. (Count VII). They sued Novus Properties to recover real-estate sales commissions Novus Properties received from the sale of two out-lots on the shopping-center parking lot. (Counts VIII and IX). And lastly, the two plaintiffs sued Novus Management to recover management fees that Novus Management received in connection with the property. (Counts X and XI).

This prior global litigation of both the building case and the shopping-center case proceeded intact for over two years. During that time, the defendants moved to strike the plaintiffs' request for attorneys' fees contained in each and every count of the petition. The trial court sustained defendants' motion.[3]

In November of 2010, all defendants except Novus Properties moved to sever plaintiffs' claims, contending the two sets of claims—those relating to the building and those relating to the shopping center—were completely unrelated. The trial court granted defendants' motion, severing the building-case counts (Counts I–VI) from the shopping-center counts (Counts VII–XI), and assigning the shopping-center counts a new case number. As a result, all claims against Novus Properties were severed into the new case. Our current parties, Lauber–Clayton and Novus Properties, were then no longer named parties in the same case, at least as determined by case number.

Two months later, in January of 2011, the parties in the building case settled during trial. These parties executed a consent judgment in favor of Lauber–Clayton and against the building-case defendants Browne and Novus Holdings, on Counts I and II, the fraudulent-misrepresentation and breach-of-fiduciary-duty counts, in a specified amount of monetary damages, but less than Lauber–Clayton's claimed actual damages.[4] Lauber–Clayton's attorney held this consent judgment and did not file it with the court, to allow

the defendants an opportunity to pay the settlement. The building-case parties understood that if the building-case defendants failed to pay by the agreed-upon, designated date, Lauber–Clayton would file the judgment without further notice. On the other hand, if the building-case defendants paid in a timely manner, Lauber–Clayton agreed to dismiss the two counts with prejudice. The building-case parties also agreed that there would be a mutual release of all claims relating to the building property. The parties to this appeal have not favored this Court with a copy of that release. The building-case parties also agreed that each party would pay its own costs and attorneys' fees. The building-case defendants timely paid Lauber–Clayton, and Lauber–Clayton in turn dismissed Counts I and II with prejudice.

Several months later, the plaintiffs in the severed shopping-center case voluntarily dismissed without prejudice all remaining claims against the defendants in that case, including all claims against Novus Properties.

This brings us to our current suit. Once the dust from this prior litigation settled, Lauber–Clayton sued Novus Properties to collect attorneys' fees it incurred in the building suit, and to recover the small remaining balance of actual damages it did not recover in the settlement. Lauber–Clayton set forth causes of action for negligence, negligence *per se,* breach of contract, fraudulent misrepresentation, and breach of fiduciary duty, all based on Novus Properties' alleged breach of its statu-

---

3. Various defendants also filed motions to dismiss. The trial court sustained these motions as to three counts. Specifically, the trial court sustained defendant Sebelski's motion to dismiss Count III. The trial court also sustained defendant Novus Properties' motion to dismiss with prejudice Counts VIII and IX.

4. Counts I and II were the only two counts remaining in the case. Immediately prior to trial, and upon motion, the trial court directed verdict in defendants' favor on Counts IV and V, and entered judgment in favor of defendants on Count VI. The trial court had already previously dismissed Count III.

tory and common-law fiduciary duties as Lauber–Clayton's real estate listing broker in failing to disclose receipt of the $1,500,000 purchase offer for the building property.

Novus Properties moved to dismiss the case on res judicata grounds. In so moving, Novus Properties argued it was a defendant in prior litigation filed by Lauber–Clayton, and that the current suit and the prior litigation involved the same operative facts, the same underlying transaction, the same claims, and the same parties. Essentially, Novus Properties argued the doctrine of res judicata precluded Lauber–Clayton from bringing the instant suit because Lauber–Clayton was attempting to litigate issues that could have been brought forward during the prior litigation, to which Novus Properties was a party defendant.

 The trial court granted summary judgment in favor of defendant Novus Properties.[5] The trial court noted that Novus Properties was a party defendant in the prior litigation, that Lauber–Clayton chose to file a petition in the prior litigation, which contained claims against Novus Properties, that the subject matter and factual allegations in both lawsuits were identical, and that Lauber–Clayton expended the now sought-after attorneys' fees in prosecuting its claims in the prior litigation wherein Novus Properties was also a defendant. The trial court thus concluded that Lauber–Clayton could have brought forward all of the claims raised in the instant litigation in the prior litigation. As a result, the trial court determined that the doctrine of res judicata precluded Lauber–Clayton's action and accordingly entered summary judgment in favor of Novus Properties. Lauber–Clayton appeals the trial court's ruling.[6]

### Standard of Review

This Court's review of the grant of summary judgment is essentially *de novo.* *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). We need not defer to the trial court's order, as its judgment is founded on the record submitted and the parties had full opportunity to submit documents relevant to the res judicata issue. The trial court held a hearing and entertained arguments on the motion. The parties have not suggested any other documents were necessary to decide the question at hand. The parties on appeal do not challenge the court's action in viewing the motion as one for summary judgment. Given these circumstances, it is appropriate for us to treat the trial court's judgment as a summary judgment. *Id.*

5. The trial court considered Novus Properties' motion to dismiss as a motion for summary judgment. Both parties referenced evidence outside the motion. Novus Properties requested the court take judicial notice of the pleadings and case file in the prior litigation. "When a motion to dismiss is predicated on res judicata, the trial court may take judicial notice of the prior judgment." *WEA Crestwood Plaza, L.L.C. v. Flamers Charburgers, Inc.,* 24 S.W.3d 1, 5 n. 2 (Mo.App. E.D.2000). Lauber–Clayton attached a number of exhibits to its memorandum of law opposing the motion to dismiss. Neither party objected to the trial court's consideration of the evidence. "Res judicata is an affirmative defense that is not self-proving; evidence to support the defense must be adduced." *Id.* at 5. Under Rule 55.27(a), when the judgment and pleadings from another case are presented to and not excluded by the trial court, a motion to dismiss on res judicata grounds should be treated as one for summary judgment. *Id.* Both

6. We grant Novus Properties' motion to strike pages A–2 through A–12 of the appendix to Lauber–Clayton's reply brief. These documents are not a part of the legal file. "Documents, depositions, etc., which are only attached to a party's brief and not contained in the legal file, are not part of the record and will not be considered on appeal." *Porter v. Toys 'R' Us–Delaware, Inc.,* 152 S.W.3d 310, 322 (Mo.App. W.D.2004).

law. *Id.* Summary judgment is appropriate only when the moving party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine dispute. *Id.;* Rule 74.04(c).

### *Discussion*

■ Res judicata operates as a bar to the reassertion of a cause of action that has been previously adjudicated in a proceeding between the same parties or those in privity with them. *Am. Polled Hereford Ass'n v. City of Kansas City,* 626 S.W.2d 237, 241 (Mo.1982); *Jordan v. Kansas City,* 929 S.W.2d 882, 885 (Mo.App. W.D. 1996). Res judicata is a common-law doctrine with roots in the Latin phrase: *"Res judicata pro veritate accipitur,"* meaning "a matter adjudged is taken for truth." Barbara Andersen Gimbel, *The Res Judicata Doctrine Under Illinois and Federal Law,* 88 Ill. B.J. 404 (2000)(citing *Black's Law Dictionary* (West 6th Ed.)); *see also Chesterfield Vill., Inc. v. City of Chesterfield,* 64 S.W.3d 315, 318 (Mo. *banc* 2002). The doctrine is designed to prevent a multiplicity of lawsuits. *66, Inc. v. Crestwood Commons Redevelopment Corp.,* 998 S.W.2d 32, 42 (Mo. banc 1999); *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495, 501 (Mo. banc 1991).

■ For res judicata to adhere, "four identities" must occur: (1) identity of the things sued for; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or status of the person for or against whom the claim is made. *King Gen. Contractors,* 821 S.W.2d at 501. When these four identities concur, res judicata operates to bar "any claim that was previously litigated between the same parties or those in privity with them." *Spath v. Norris,* 281 S.W.3d 346, 350 (Mo.App. W.D.2009). Res judicata also precludes all points "properly belonging to the subject matter of the litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." *King Gen. Contractors,* 821 S.W.2d at 501. In other words, if res judicata applies, the doctrine precludes a litigant from bringing "claims that should have been brought in the first suit." *Kesterson v. State Farm Fire & Cas. Co.,* 242 S.W.3d 712, 715 (Mo. banc 2008). Res judicata encompasses the law of merger and bar. *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). "Merger" expresses the idea that, when a plaintiff prevails in a lawsuit arising from a particular transaction, all of the claims plaintiff raised or could have raised merge into the judgment. Gimbel, *supra.* "Bar" refers to the companion idea that a judgment for a defendant in a lawsuit bars the plaintiff from litigation any of the claims that plaintiff brought or could have brought in the suit. *Id.; see also King Gen. Contractors,* 821 S.W.2d at 501–02; Restatement (Second) of Judgments § 24 (1982). "The founding of res judicata and the introduction of the concepts of 'merger' and 'bar' resulted from the practical necessity that there be an end to litigation and that controversies once decided on their merits shall remain in repose." Gimbel, *supra.* However, res judicata does not operate to preclude later litigation, including those claims that could have been brought, unless the four identities first occur. *Hollida v. Hollida,* 190 S.W.3d 550, 555 (Mo.App. S.D.2006).[7]

---

7. Res judicata also requires a final judgment on the merits involving the same claim or issue sought to be precluded. *Lomax v. Sewell,* 50 S.W.3d 804, 809 (Mo.App. W.D. 2001). Because the lack of identities disposes of this appeal, we need not determine whether the previous litigation ended in a final judgment.

■ To resolve this appeal, we need only consider one of these requirements: the identity of parties. The parties here, without supporting authority, advance diametrically-opposed views of the effect of severance in this case. Novus Properties insists we look to the prior litigation before severance, and contends identity of parties is present because it was a named defendant in that global litigation. Lauber–Clayton, on the other hand, maintains we must look to the prior litigation post-severance. We need not confront this dilemma. In the end, under the circumstances of this case, it makes no difference when we compare the present litigation to the prior litigation. Undeniably, if one considers the prior litigation after the claims against Novus Properties were severed into a separate cause, identity of parties is obviously lacking. But even if we look to the prior litigation before severance occurred, identity of parties is still lacking.

■ A party is identical, for purposes of res judicata, when it is the same party that litigated the prior suit or when the new party was in privity with the party that litigated the prior suit. *See Lomax v. Sewell*, 50 S.W.3d 804, 809 (Mo.App. W.D. 2001). Granted, Novus Properties was a named defendant in the prior global litigation. However, in keeping with established tradition and practice, we look not only to the caption of the prior litigation, but also to the substance of the petition in the prior litigation. *See State ex rel. Tinnon v. Mueller*, 846 S.W.2d 752, 759 (Mo. App. E.D.1993); *Singer v. Siedband*, 138 S.W.3d 750, 754 (Mo.App. E.D.2004); *Watson v. Watson*, 562 S.W.2d 329, 331 n. 2 (Mo.1978). So considering the present petition with the petition in the prior litigation, it becomes clear that the parties are not identical because Lauber–Clayton made no claim whatsoever against Novus Properties in the prior litigation. Novus

Properties defended against actions brought by two Lauber entities, but not against an action brought by Lauber–Clayton. Put simply, there was no prior litigation between our present parties, Lauber–Clayton and Novus Properties. Of course, a party need not have been a party to the prior action, for res judicata to apply, so long as the party was in privity with one of the parties to that prior action. *Lomax*, 50 S.W.3d at 809. "Privity," as a basis for satisfying the "identical party" requirement of res judicata, "is premised on the proposition that the interests of the party and non-party are so closely intertwined that the non-party can fairly be considered to have had his or her day in court." *Id.* But the summary-judgment record here contains no allegation or evidence that Novus Properties was in privity with Novus Holdings, Mr. Browne, or Sebelski Holdings, defendants to the claims brought by Lauber–Clayton in the prior litigation.

Res judicata, with its preclusive effect, is a powerful means of encouraging prudence and forethought in litigation. We grant that the lawyering here did nothing to further judicial economy. The parties here were part of the same global litigation for over two years. The individuals involved in the prior and present litigation appear the same. The attorneys are likewise the same. The same counsel represented all three Lauber entities in the prior litigation. The same counsel represented all the Novus entities in the prior litigation. Mr. Browne had his own separate attorney. The underlying transaction, claimed damages, and relief sought are all the same. Res judicata is directed at promoting judicial economy and preventing piecemeal and protracted litigation. *See Kesterson*, 242 S.W.3d at 716; Gimbel, *supra*. Lauber–Clayton has seemingly thwarted these basic objectives. Lauber–Clayton very well could have brought its action for damages and attor-

neys' fees against Novus Properties in the prior litigation. However, we find no authority that requires them to do so.

 "When two defendants are potentially liable for the same loss, the claims are considered separate and two suits can be maintained against the differing parties." *Hollida*, 190 S.W.3d at 556 (citing Restatement (Second) of Judgments § 49). As aptly stated by the Restatement:

> When a person suffers injury as the result of the concurrent or consecutive acts of two or more persons, he has a claim against each of them. If he brings an action against one of them, he is required to present all the evidence and theories of recovery that might be advanced in support of the claim against that obligor.... If he recovers judgment, his claim is 'merged' in the judgment so that he may not bring another action on the claim against the obligor whom he has sued.... Correlatively, if judgment is rendered against him, he is barred from bringing a subsequent action against the obligor....But the claim against others who are liable for the same harm is regarded as separate. Accordingly, a judgment for or against one obligor does not result in merger or bar of the claim that the injured party may have against another obligor.

Restatement (Second) of Judgments § 49 (1982)(comment a). However, the injured party's right to maintain separate causes of actions against multiple obligors is subject to constraints. *Id.* Novus Properties contends res judicata is one such constraint, and that it applies here to bar the instant suit because Lauber–Clayton could have brought this suit earlier, as part of the prior litigation. We cannot agree. Even though Lauber–Clayton could have raised the present claims against Novus Properties in the prior litigation, res judicata does not apply unless the four identities are met, and here they are not.

We limit our review here to the narrow question of whether, based on the summary-judgment record before us, res judicata applies to preclude Lauber–Clayton's present suit. We express no opinion as to whether Lauber–Clayton will ultimately prevail on their claims. Based on the record before us, the parties are not identical because the parties in the present litigation did not adjudicate anything between themselves in the prior litigation. Thus res judicata does not preclude Lauber–Clayton from bringing the present suit. We therefore reverse the trial court's judgment and remand the cause for further proceedings.

PATRICIA L. COHEN, J., and KURT S. ODENWALD, J., concur.